1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   PETER ERICKSON; DENISE                   No.  2:12-cv-2784 MCE DAD PS
     ERICKSON,
12

13               Plaintiffs,                  FINDINGS & RECOMMENDATIONS

14         v.

15   STATE FARM GENERAL INSURANCE
     COMPANY,
16
                 Defendant.
17

18              This matter came before the court on June 21, 2013, for hearing of defendant's

19   motion for summary judgment.  Attorney Robert McLay appeared for the moving party.

20   Plaintiffs Peter Erickson and Denise Erickson, proceeding pro se, each appeared on their own

21   behalf.  Oral argument was heard and defendant's motion was taken under submission.

22              For the reasons set forth below, the court will recommend that defendant's motion

23   for summary judgment be granted.

24                                   BACKGROUND

25              Plaintiffs, then proceeding through counsel, commenced this action by filing a

26   complaint on August 16, 2012, in the Colusa County Superior Court, alleging claims for breach

27   /////

28   /////

                                              1

1    of contract and breach of the implied covenant of good faith and fair dealing.  (Doc. No. 2 at 6.[1])

2    On October 25, 2012, plaintiffs' counsel substituted out of this action and plaintiffs elected to

3    proceed pro se.  (Id. at 30.)  Defendant State Farm General Insurance Company ("State Farm")

4    removed the matter to this court on November 13, 2012, based on diversity jurisdiction.  (Id. at

5    1.)  Defendant filed an answer that same day.  (Doc. No. 3.)

6            On February 4, 2013, counsel for defendant filed a motion for summary judgment

7    but incorrectly noticed the motion to be heard before the assigned District Judge.  (Doc. No. 10.)

8    Accordingly, on February 25, 2013, the assigned District Judge issued a minute order referring

9    the matter to the undersigned pursuant to Local Rule 302(c)(21) and directing defendant to re-

10   notice its motion for hearing before the undersigned.  (Doc. No. 18.)  On February 26, 2013,

11   defendant re-noticed its motion for summary judgment for hearing before the undersigned.  (Doc.

12   No. 20.)

13           The parties appeared before the undersigned on April 5, 2013.  After hearing

14   argument from the parties the mattered was continued for further hearing to June 21, 2013.  The

15   court also granted plaintiffs additional time to either file an opposition to defendant's motion for

16   summary judgment or have counsel substitute into this case on their behalf.  (Doc. No. 25.)

17           On May 20, 2013, plaintiffs filed an opposition to the pending motion for

18   summary judgment.  (Doc. No. 29.)  Defendant filed a reply on June 14, 2013.  (Doc. No. 31.)

19   Further arguments on behalf of both parties were heard on June 21, 2013.  (Doc. No. 32.)

20                                    FACTUAL ALLEGATIONS

21           In their complaint, plaintiffs allege as follows.  On or about March 23, 2011, a

22   tornado damaged their home.  (Compl. (Doc. No. 2) at 6.)  After the tornado passed, plaintiffs

23   discovered that, in addition to other damage caused to their home, the tornado had torn off

24   roofing tiles, twisted the roof's hurricane clips and that the home's doors and windows were no

25   longer plumb.  (Id. at 7.)  Plaintiffs reported the damages to defendant State Farm in a timely

26   manner and filed a claim for indemnification pursuant to the terms and condition of their

27   ─────────────────

28   [1]   Page number citations such as this one are to the page number reflected on the court's
     CM/ECF system and not to page numbers assigned by the parties.

2

1  homeowners insurance policy issued by State Farm.  (Id. at 10.)  After assigning an adjuster and

2  representative to investigate plaintiffs' loss claim, State Farm denied coverage for plaintiffs' loss

3  claim beyond replacing the home's roofing tiles.  (Id.)

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

5  I.  Legal Standards

6         Summary judgment is appropriate when the moving party "shows that there is no

7  genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

8  Fed. R. Civ. P. 56(a).

9         Under summary judgment practice, the moving party "initially bears the burden of

10  proving the absence of a genuine issue of material fact."  In re Oracle Corp. Securities Litigation,

11  627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

12  The moving party may accomplish this by "citing to particular parts of materials in the record,

13  including depositions, documents, electronically store information, affidavits or declarations,

14  stipulations (including those made for purposes of the motion only), admission, interrogatory

15  answers, or other materials" or by showing that such materials "do not establish the absence or

16  presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to

17  support the fact."  FED. R. CIV. P. 56(c)(1)(A), (B).  When the non-moving party bears the burden

18  of proof at trial, "the moving party need only prove that there is an absence of evidence to support

19  the nonmoving party's case."  Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.).

20  See also FED. R. CIV. P. 56(c)(1)(B).  Indeed, summary judgment should be entered, after

21  adequate time for discovery and upon motion, against a party who fails to make a showing

22  sufficient to establish the existence of an element essential to that party's case, and on which that

23  party will bear the burden of proof at trial.[2]  See Celotex, 477 U.S. at 322.  "[A] complete failure

24  of proof concerning an essential element of the nonmoving party's case necessarily renders all

_____

[2]  At the April 5, 2013 hearing the undersigned expressed some concern that defendant's motion
may be premature in light of the lack of adequate time for discovery in this action.  However,
given the evidence and argument submitted in support of defendant's motion for summary
judgment, and plaintiffs' statement in their opposition indicating that they do not dispute
defendant's version of the facts at issue, the undersigned now finds that defendant's motion is not
premature.

1    other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so

2    long as whatever is before the district court demonstrates that the standard for entry of summary

3    judgment, . . ., is satisfied."  Id. at 323.

4            If the moving party meets its initial responsibility, the burden then shifts to the

5    opposing party to establish that a genuine issue as to any material fact actually does exist.  See

6    Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

7    establish the existence of this factual dispute, the opposing party may not rely upon the

8    allegations or denials of its pleadings but is required to tender evidence of specific facts in the

9    form of affidavits, and/or admissible discovery material, in support of its contention that the

10   dispute exists.  See FED. R. CIV. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11.  The opposing

11   party must demonstrate that the fact in contention is material, i.e., a fact that might affect the

12   outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

13   248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

14   1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return

15   a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436

16   (9th Cir. 1987).

17           In the endeavor to establish the existence of a factual dispute, the opposing party

18   need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

19   claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

20   versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

21   judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

22   genuine need for trial.'"  Matsushita, 475 U.S. at 587 (citations omitted).

23           "In evaluating the evidence to determine whether there is a genuine issue of fact,"

24   the court draws "all reasonable inferences supported by the evidence in favor of the non-moving

25   party."  Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011).  It is

26   the opposing party's obligation to produce a factual predicate from which the inference may be

27   drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),

28   aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing

                                                    4

1    party "must do more than simply show that there is some metaphysical doubt as to the material

2    facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the

3    nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation

4    omitted).

5    II.  Defendant's Statement of Undisputed Facts and Evidence

6                   Defendant's statement of undisputed facts is supported by a request for judicial

7    notice of documents, a declaration from State Farm Claims Representative Carrie Van Asdlan

8    signed under penalty of perjury and hundreds of pages of exhibits.  Defendant's statement of

9    undisputed facts establishes the following.  On March 23, 2011, a tornado damaged plaintiffs'

10   home in Williams, California.  Plaintiffs' home was insured for damage under a State Farm issued

11   homeowners insurance policy.  Plaintiffs notified State Farm of their loss claim on March 23,

12   2011.  (Def.'s SUDF (Doc. No. 11) 1-3.[3]

13                  On April 5, 2011, a State Farm claim representative inspected plaintiffs' home.

14   The inspection revealed "normal settlement cracks" and no signs of shifting, moving or

15   separation.  On April 10, 2011, State Farm prepared a letter for plaintiffs that included State

16   Farm's estimate of the cost to repair the damage to plaintiffs' home and payment to plaintiffs in

17   the amount of $2,897.76 for those repairs.  (Def.'s SUDF (Doc. No. 11) 4, 8.)

18                  On April 21, 2011, State Farm received a repair estimate in the amount of

19   $12,513.20 from plaintiffs' contractor Robert Rossini, who stated in the estimate that the City of

20   Williams Building Department was requiring that plaintiffs' roof be completely replaced and not

21   simply repaired.  On April 26, 2011, Debbie Rich from the Williams Building Department

22   informed State Farm that plaintiffs' roof could be repaired and did not in fact need to be replaced.

23   State Farm provided this information to plaintiffs' contractor Robert Rossini.  (Def.'s SUDF

24   (Doc. No. 11) 9-10, 12-13.)

25                  On April 27, 2011, Mr. Erickson requested that State Farm have plaintiffs' home

26   inspected by an engineer.  On April 28, 2011, State Farm discussed plaintiffs' claim with Mr.

27

28   [3]  Citations here are to the specific numbered undisputed fact asserted.

1  Erickson and agreed to conduct a second inspection of plaintiffs' home, this time with contractor

2  Rossini present.  On April 30, 2011, a State Farm representative, Mr. Rossini and Mr. Erickson

3  met at plaintiffs' home and re-inspected the residence.  On May 3, 2011, State Farm issued a

4  letter advising plaintiffs that the April 30, 2011, inspection revealed no additional damage.  The

5  letter also advised plaintiffs about the one-year limitation period for filing a lawsuit against State

6  Farm based on the insurance policy, that State Farm considered plaintiffs' "claim closed" as of

7  the date of that letter and that the limitation period was "again running as of the date of this

8  letter."  (Def.'s SUDF (Doc. No. 11) 14-15, 21.)

9           On May 5, 2011, the parties agreed that State Farm would incur the cost of having

10  an engineer inspect plaintiffs' residence.  On May 11, 2011, an engineer from Madsen, Kneppers

11  & Associates ("MKA") inspected plaintiffs' home along with Mr. Erickson and a contractor of

12  plaintiffs, Jay O'Neal of Alpine Roofing.  On May 31, 2011, State Farm received and reviewed

13  MKA's report.  MKA's findings were consistent with State Farm's prior findings, although MKA

14  found that an additional square of roof tile needed to replaced and that a downspout needed to be

15  reset.  Based on those findings State Farm revised its prior estimate of the cost of repairs to

16  plaintiffs' home upwards by $782.77.  In a letter dated that same day issuing plaintiffs a payment

17  in the amount of $782.77, and including MKA's report, State Farm advised plaintiffs that it

18  considered their claim closed as of the date of that letter.  (Def.'s SUDF (Doc. No. 11) 23, 25, 27-

19  31.)

20           On July 15, 2011, the Williams Building Department prepared a Correction Notice

21  requiring additional repairs to plaintiffs' residence.  On July 21, 2011, State Farm spoke with

22  Debbie Rich of the Williams Building Department.  That same day State Farm spoke with Mr.

23  Erickson regarding the additional repairs to plaintiffs' home that the City of Williams was

24  requiring and indicated that it would like to conduct a further inspection with its own contractor

25  to review the additional repairs required by the Correction Notice.  (Def.'s SUDF (Doc. No. 11)

26  32, 35-37.)

27           On July 26, 2011 State Farm contacted DH Construction who agreed to inspect

28  plaintiffs' residence on the condition that DH Construction be allowed to retain an engineer to

1   assist in their evaluation.  State Farm agreed.  On July 28, 2011, State Farm sent a letter to

2   plaintiffs advising them that State Farm had agreed to extend coverage for additional repairs to

3   their roof based on the information provided by the Correction Notice.  (Def.'s SUDF (Doc. No.

4   11) 39-42.)

5          On August 3, 2011, a representative from State Farm, DH Construction, engineer

6   Michael O'Connor, Mr. Erickson and plaintiffs' contractor re-inspected plaintiffs' home.  On

7   August 9, 2011, State Farm received and reviewed the engineering report from engineer Michael

8   O'Connor and DH Constructions' estimate of the cost of the needed repairs.  On August 17, 2011,

9   State Farm sent plaintiffs an additional payment of $19,691.20 based on the estimate provide by

10  DH Construction for the repairs required by the Correction Notice issued by the Williams

11  Building Department.  The August 17, 2011 letter from State Farm also advised plaintiffs that the

12  "suit limitation period is again running as of the date" of that letter.  (Def.'s SUDF (Doc. No. 11)

13  43-47.)

14         On October 14, 2011, Mr. Erickson informed State Farm that the National Weather

15  Service had re-classified the tornado that struck plaintiffs' home from an EF-0 to an EF-1,

16  indicating that the tornado's wind speed was greater than previously assumed.  On October 18,

17  2011, State Farm contacted engineer O'Connor to discuss whether the information recently

18  provided by Mr. Erickson changed the findings of his report.  Mr. O'Connor stated that it did not.

19  On October 24, 2011, State Farm sent plaintiffs a letter advising them of Mr. O'Connor's

20  determination and advising plaintiff that the "claim file remains closed."  (Def.'s SUDF (Doc.

21  No. 11) 48-50.)

22         On November 23, 2011, State Farm sent plaintiffs a letter in response to plaintiffs

23  request for an appraisal.  In that letter State Farm referred to the one-year limitation period and

24  advised plaintiffs that they had "approximately six and a half months remaining to file suit."

25  Plaintiffs filed this action on August 16, 2012. (Def.'s SUDF (Doc. No. 11) 51, 54-55.)

26  III.  Plaintiffs' Opposition

27         Plaintiffs' opposition does not comply with Local Rule 260(b).  That rule requires

28  a party opposing summary judgment to (1) reproduce each fact enumerated in the moving party's

1   statement of undisputed facts and (2) expressly admit or deny each fact.  Under that provision the

2   party opposing summary judgment is also required to cite evidence in support of each denial.

3   Moreover, in their opposition plaintiffs explicitly state that they "do not object to State Farms

4   version of the facts of this case . . . ."  (Pl.'s Opp.'n (Doc. No. 29) at 1.)

5          Nonetheless, in the absence of the required admissions and denials, and in light of

6   plaintiffs' pro se status, the court has reviewed plaintiffs' filing in an effort to discern whether

7   plaintiffs actually deny any material fact asserted in defendant's statements of undisputed facts

8   and, if so, what evidence plaintiffs have offered that may demonstrate the existence of a disputed

9   issue of material fact with respect to any of their claims.

10                                              ANALYSIS

11  I.  Limitations Period

12         Pursuant to California Insurance Code § 2071, an insurer may issue an insurance

13  policy requiring that any suit arising out of the policy must be brought within one year after

14  inception of the loss.  See also Campanelli v. Allstate Life Ins. Co., 322 F.3d 1086, 1093-94 (9th

15  Cir. 2003) ("Under this provision, any claim that is 'on the policy' must be brought within 12

16  months of the 'inception of the loss' or it is time-barred.").  Here, it is undisputed by the parties

17  that the inception of loss occurred on March 23, 2011.

18         However, the running of the limitations period is tolled "from the time an insured

19  gives notice of the damage to his insurer, pursuant to applicable policy notice provisions, until

20  coverage is denied." Prudential-LMI Com. Insurance v. Superior Court, 51 Cal.3d 674, 693

21  (1990).  See also Gaylord v. Nationwide Mut. Ins. Co., 776 F. Supp.2d 1101, 1114 (E.D. Cal.

22  2011) ("The limitations period is tolled from the time the insured gives notice of the claim to the

23  insurance company until the time the insurer formally denies the claim in writing.").  Here, the

24  parties' do not dispute that plaintiffs notified State Farm of their claim on March 23, 2011, the

25  same day the inception of loss occurred.

26         The tolling of the limitations periods ends "upon the insurer's unconditional denial

27  of the insured's claim in writing," and it "does not matter that the insurer's act of denial does not

28  specifically use that word."  Doheny Park Terrace Homeowners Ass'n, Inc. v. Truck Ins.

8

1   Exchange, 132 Cal.App.4th 1076, 1088 (2005).  See also Gaylord, 776 F. Supp.2d at 1114 ("The

2   insurer's denial must be unequivocal."); Migliore v. Mid-Century Ins. Co., 97 Cal.App.4th 592,

3   605 (2002) (failure to use words deny or denial does not render a denial equivocal).  Moreover,

4   "it is well-established in California that an invitation to provide further information does not

5   render a denial equivocal."  Heighley v. J.C. Penney Life Ins. Co., 257 F. Supp.2d 1241, 1257

6   (C.D. Cal. 2003).  See also Migliore, 97 Cal.App.4th at 605 ("A statement of willingness to

7   reconsider does not render a denial equivocal.").  However, "an insurer's agreement to reopen and

8   investigate can toll the limitations period."  Gaylord, 776 F. Supp.2d at 1114 (citing Ashou v.

9   Liberty Mut. Fife Ins. Co., 138 Cal. App.4th 748, 762-63 (2006)).

10          Here, viewed in the light most favorable to plaintiffs, the facts and evidence

11   offered by defendant and undisputed by plaintiffs, establishes that plaintiffs were made aware of

12   the policy's one year limitation period for the filing of this lawsuit for the first time in State

13   Farm's May 3, 2011 letter, and thereafter were repeatedly reminded of that limitation period.

14   (Ex. 9 (Doc. No. 14-1) at 32.)  After a period of investigation, State Farm unequivocally closed

15   plaintiffs' loss claim in a letter date May 31, 2011, causing the limitation period to begin to run.[4]

16   (Ex. 15 (Doc. No. 14-2) at 6.)  Plaintiff's loss claim remained closed from June 1, 2011, until July

17   15, 2011, when the Williams Building Department issued a Correction Notice, (Ex. 16 (Doc. No.

18   14-2 at 8), a span of 44 days.

19          After some additional inspection, evaluation and compensation, during which time

20   the limitations period was tolled, State Farm again unequivocally closed plaintiffs' claim in a

21   letter dated August 17, 2011.  The letter explicitly stated that State Farm considered plaintiffs'

22   "claim closed as of the date of [the] letter" and cautioned plaintiffs that the one-year "suit

23   limitation period is again running as of the date of this letter."  (Ex. 23 (Doc. No. 14-3) at 7.)

24   From August 18, 2011, plaintiffs' claim remained closed until at least October 14, 2011, when

25   /////

26

27   _____

     [4]  Although defendant asserts that the limitation period actually ran for one day prior to this, the
28   undersigned is not entirely persuaded.  Accordingly, viewing the evidence in the light most
     favorable to plaintiffs, that day will be excluded from the court's limitations period calculation.

1  plaintiffs provided additional information to State Farm concerning the strength of the tornado

2  that hit their home, (Ex. 24 (Doc. No. 14-4) at 2), a span of 57 days.

3          State Farm responded to the additional information submitted by plaintiffs in a

4  letter dated October 24, 2011.  Therein, State Farm advised plaintiffs that the information

5  provided "did not change" their assessment or their belief that "all covered damages have been

6  paid," and reiterated that plaintiffs' "claim file remains closed." (Ex. 26 (Doc. No. 14-4) at 6-7.)

7  From October 25, 2011, the day after State Farm issued the October 24, 2011 letter, until August

8  16, 2012, the day plaintiffs filed this action, 296 additional days passed.

9          Based on this time line, even under the most generous of calculations, plaintiffs'

10  action now pending before this court is untimely.  In this regard, calculating from the date of

11  inception of loss, to the date plaintiffs filed this action, excluding the time that the limitations

12  period was tolled _and_ even allowing four days for mailing and receipt by plaintiffs of each of

13  State Farm's notices recommencing the running of the limitations period _and_ excluding that time,

14  would result in a total span of 385 days, twenty days more than is allowed under the applicable

15  limitation period.

16          Moreover, the undersigned notes that in a November 23, 2011 letter following up

17  Mr. Erickson's November 21, 2011, telephone call inquiring about the cost of an appraisal, State

18  Farm again advised plaintiffs of the one year limitations period and explicitly informed them that

19  that they had "approximately six and a half months remaining to file suit."[5] (Ex. 27 (Doc. No.

20  14-4) at 10.)  Plaintiffs, however, did not file this action until almost nine months later and after

21  the limitations period for doing so had expired.[6]

22

23  [5]  Plaintiffs do not argue in their opposition that Mr. Erickson's November 21, 2011, telephone
24  call tolled the running of the limitations period.  However, based on the above calculations, even
    if the undersigned did exclude this time from the limitations period calculation, plaintiffs' action
25  would still be untimely filed.

26  [6]  According to plaintiffs' statements at oral argument it appears plaintiffs may have relied on
    inaccurate advice by their then-counsel as to when to timely file this action.  Assuming that
27  representation is accurate, the undersigned is certainly sympathetic to the unfortunate
    circumstances which plaintiffs find themselves in.  However, those circumstances do not provide
28  a basis for the court to excuse the filing of this action outside the applicable limitations period.

1    Accordingly, because plaintiffs did not file this action within the one year

2    limitations period allowed under the policy (see Cal. Ins. Code § 2071; Campanelli, 322 F.3d at

3    1093-94), defendant's motion for summary judgment must be granted.

4    II.  Bad Faith

5    Defendant argues that, even if this action were not dismissed due to the running of

6    the applicable limitations period, defendant would be entitled to summary judgment in its favor as

7    to plaintiffs' claim for breach of the implied covenant of good faith and fair dealing because the

8    evidence establishes that the parties had a genuine dispute.  (MSJ (Doc. No. 12) at 22.)

9    To establish a breach of an implied covenant of good faith and fair dealing, a

10    plaintiff must establish the existence of a contractual obligation, along with conduct that frustrates

11    the other party's rights to benefit from the contract."  Fortaleza v. PNC Fin. Servs. Group, Inc.,

12    642 F. Supp.2d 1012, 1021-22 (N.D. Cal. 2009) (citing Racine & Laramie v. Dep't of Parks &

13    Rec., 11 Cal. App.4th 1026, 1031 (1992)).  The "implied covenant of good faith and fair dealing

14    is limited to assuring compliance with the express terms of the contract, and cannot be extended

15    to create obligations not contemplated by the contract."  Pasadena Live, LLC v. City of Pasadena,

16    114 Cal. App.4th 1089, 1093-94 (2004).  See also Guz v. Bechtel Nat. Inc., 24 Cal.4th 317, 349-

17    50 (2000) ("[T]he implied covenant will only be recognized to further the contract's purpose; it

18    will not be read into a contract to prohibit a party from doing that which is expressly permitted by

19    the agreement itself .").

20    Moreover, "[t]he implied covenant of good faith and fair dealing does not impute

21    an obligation on the insurer to pay every claim made by its insured."  Wilson v. 21st Century Ins.

22    Co., 42 Cal.4th 713, 721 (2007).  Nonetheless, when "the insurer unreasonably and in bad faith

23    withholds payment of the claim of its insured, it is subject to liability in tort."  Id. at 720 (quoting

24    Frommoethelydo v. Fire Ins. Exch., 42 Cal.3d 208, 214-15 (1986)).  To avoid such liability, an

25    insurer must fully investigate a claim's grounds for denial and approval.  Wilson, 42 Cal.4th at

26    721.  Likewise, an insurer must not deny a claim on grounds unfounded or contradicted by known

27    facts.  Id.

28    /////

11

> There must be proof the insurer failed or refused to discharge its contractual duties not because of an honest mistake, bad judgment, or negligence, "but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement."

Century Sur. Co. v. Polisso, 139 Cal. App.4th 922, 949 (2006) (quoting Chateau Chamberay Homeowners Assn. v. Associated Internat. Ins. Co., 90 Cal. App.4th 335, 345 (2001)). "[T]he critical issue [is] the reasonableness of the insurer's conduct under the facts of the particular case . . . . An insurer's good or bad faith must be evaluated in light of the totality of the circumstances surrounding its actions." Wilson, 42 Cal.4th at 723.

Under the "genuine dispute" rule:

> [A]n insurer denying or delaying the payment of policy benefits due to the existence of a genuine dispute with its insured as to the existence of coverage liability or the amount of the insured's coverage claim is not liable in bad faith even though it might be liable for breach of contract.

Id. (quoting Chateau Chamberay Homeowners Assn., 90 Cal. App.4th at 34).

> The genuine issue rule in the context of bad faith claims allows a [trial] court to grant summary judgment when it is undisputed or indisputable that the basis for the insurer's denial of benefits was reasonable-for example, where even under the plaintiff's version of the facts there is a genuine issue as to the insurer's liability under California law. [Citation.] . . . On the other hand, an insurer is not entitled to judgment as a matter of law where, viewing the facts in the light most favorable to the plaintiff, a jury could conclude that the insurer acted unreasonably.

Wilson, 42 Cal.4th at 724 (quoting Amadeo v. Principal Mut. Life Ins. Co., 290 F.3d 1152, 1161–62 (9th Cir. 2002)).

Here, the undisputed evidence before the court establishes that after plaintiffs notified State Farm of their loss claim on March 23, 2011, a State Farm representative inspected plaintiffs' home on April 5, 2011. That inspection revealed "normal settlement cracks," "no signs of shifting or moving to the rear slop or front side slope," and "[n]o signs of cracks showing separation or movement." (Van Asdlan Decl. (Doc. No. 14) at 2.) State Farm then issued plaintiffs a check for the estimated cost of the repairs to plaintiffs' roof based on the investigation conducted April 5, 2011.

12

1    On April 26, 2011, Debbie Rich from the Williams Building Department notified

2    State Farm that plaintiffs' roof could be repaired and did not need to be replaced.  (Ex. 5 (Doc.

3    No. 14-1) at 21.)  However, after plaintiffs submitted a cost of repairs estimate from their own

4    contractor, State Farm agreed to re-inspect plaintiffs' home.  On April 30, 2011, a State Farm

5    claims adjuster, plaintiff Peter Erickson and plaintiffs' contractor re-inspected plaintiffs' home.

6    (Van Asdlan Decl. (Doc. No. 14) at 4.)  State Farm's claims adjuster found "no additional

7    damage than what was observed in the original inspection . . . ."  (Ex. 8 (Doc. No. 14-1) at 30.)

8    On May 5, 2011, after plaintiffs again disputed State Farm's findings, State Farm

9    agreed to have plaintiffs' home again inspected, this time by an engineer.  On May 11, 2011,

10   plaintiffs' home was inspected by an engineer from Madsen, Kneppers & Associates, Inc.  The

11   engineer's report concluded that the damage to plaintiffs' home was "limited to roofing tiles," "a

12   fascia board," and a "roof gutter downspout."  (Ex. 12 (Doc. No. 14-1) at 46.)  State Farm revised

13   its estimate of plaintiffs' loss upwards based on that report and issued plaintiffs an additional

14   payment for that loss.

15   On July 15, 2011, the Williams Building Department issued a Correction Notice

16   requiring additional repairs to plaintiffs' home.  On August 3, 2011, a representative from State

17   Farm, DH Construction, engineer Michael O'Conner, Mr. Erickson and plaintiffs' contractor, all

18   re-inspected plaintiffs' home in light of the Correction Notice issued by the Williams Building

19   Department.  (Ex. 21 (Doc. No. 14-2) at 19.)  After reviewing the estimate provided by DH

20   Construction for the cost of the repairs indicated by the Correction Notice, State Farm again

21   issued plaintiffs an additional payment to cover the cost of those repairs.

22   In this regard, although plaintiffs obviously disagreed with State Farm's

23   determination of their loss claim, and in light of the July 15, 2011 Correction Notice issued by the

24   Williams Building Department not without some justification, plaintiffs have offered no evidence

25   calling into question the adequacy of State Farm's investigation into their loss claim.  "Among

26   the most critical factors bearing on the insurer's good faith is the adequacy of its investigation of

27   the claim."  Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc., 78 Cal. App.4th

28   847, 880 (2000).

1    Here, the reports issued in connection with State Farm's investigation into

2    plaintiff's loss claim regularly supported State Farm's initial findings with respect to the damage

3    to plaintiffs' home.  See Adams v. Allstate Ins. Co., 187 F. Supp.2d 1219, 1228 (C.D. Cal. 2002)

4    ("Thus, the EEI report, on which Allstate reasonably relied, created a genuine dispute over

5    coverage.").  Accordingly, even if State Farm's determination was ultimately found to be in error,

6    its denial of plaintiffs' loss claim was reasonable.  See Brandt v. Superior Court, 37 Cal.3d 813,

7    819 (1985) ("An erroneous interpretation of an insurance contract by an insurer does not

8    necessarily make the insurer liable in tort for violating the covenant of good faith and fair dealing;

9    to be liable in tort, the insurer's conduct must also have been *unreasonable*.") (emphasis in

10    original) (quotation omitted); Tomaselli v. Transamerica Ins. Co., 25 Cal. App.4th 1269, 1280-81

11    (1994) ("The mistaken withholding of policy benefits, if reasonable or based on a legitimate

12    dispute as to the insurer's liability . . . does not expose the insurer to bad faith liability .")

13    Moreover, State Farm repeatedly agreed to reconsider its loss determination and

14    conducted further investigation into plaintiffs' loss claim.  In this regard, "[t]he insurer's

15    willingness to reconsider its denial of coverage and to continue an investigation into a claim has

16    been held to weigh to favor of its good faith."  Shade Foods, Inc., 78 Cal. App.4th at 880.

17    Accordingly, based on the evidence presented by the defendant, and the absence of

18    any evidence to the contrary submitted by plaintiffs, defendant's motion for summary judgment

19    in its favor as to plaintiffs' claim for breach of the implied covenant of good faith and fair dealing

20    should also be granted.

21                                        CONCLUSION

22    Accordingly, for the reasons stated above, IT IS HEREBY RECOMMENDED

23    that:

24    1.  Defendant's February 4, 2013 motion for summary judgment (Doc. No. 10) be

25    granted; and

26    2.  This action be dismissed.

27    These findings and recommendations are submitted to the United States District

28    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

14

1  one days after being served with these findings and recommendations, any party may file written

2  objections with the court and serve a copy on all parties.  Such a document should be captioned

3  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

4  shall be served and filed within seven days after service of the objections.  The parties are advised

5  that failure to file objections within the specified time may waive the right to appeal the District

6  Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

7  Dated:  August 9, 2013

8

9                                              Dale A. Drozd

10                                        DALE A. DROZD
                                         UNITED STATES MAGISTRATE JUDGE

DAD:6
11  Ddad1\orders.pro se\erickson2784.msj.f&rs.docx

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28